# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

CODY KETTLEWOOD and
RICHARD FREIRE, individually and
on behalf of all others similarly
situated,

        Plaintiff,

v.

FIDELITY NATIONAL FINANCIAL,
INC., and LOANCARE, LLC

        Defendants.

**CASE NO.: 3:24-cv-00012**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs, Cody Kettlewood and Richard Freire (herein "Plaintiffs"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, bring this Class Action Complaint against Fidelity National Financial, Inc.'s ("FNF") and LoanCare, LLC ("LoanCare") (herein collectively "Defendants"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

## INTRODUCTION

1.     Plaintiffs and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted FNF and LoanCare with sensitive

personally identifiable information ("PII")[1] that was subsequently exposed in a data breach, which FNF publicly disclosed on November 19, 2023 (the "Data Breach" or the "Breach").

2.    Plaintiffs claims arise from Defendants' failure to properly secure and safeguard PII that was entrusted to them, and their accompanying responsibility to store and transfer that information. Over 1.3 million consumers' information was affected by the Data Breach, including names, Social Security numbers and loan numbers.[2]

3.    FNF is a leading provider of title insurance and transaction services to the real estate and mortgage industries. FNF is the nation's largest title insurance company through their title insurance underwriters.[3] LoanCare, a subsidiary of FNF, is one of the largest providers of loan subservicing services in the United States.

4.    Defendants had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on their affirmative

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[2] *Data Breach Notifications: LoanCare, LLC*, OFFICE OF THE MAINE ATTORNEY GENERAL https://apps.web.maine.gov/online/aeviewer/ME/40/25bd9abc-608b-4a8a-8f35-ba5413b9399f.shtml (last visited January 4, 2024).

[3] *Company Overview*, FIDELITY NATIONAL FINANCIAL https://www.investor.fnf.com/ ( last visited January 4, 2024).

representations to Plaintiffs and the Class, to keep their PII confidential, safe, secure, and protected from unauthorized disclosure or access

5.  On or around November 19, 2023, Defendants became aware of a successful attack on FNF's information technology network.[45] In response, FNF "commenced an investigation, retained leading experts to assist the Company, notified law enforcement authorities, regulatory authorities and other stakeholders and followed [its] incident response plan."[6] Additionally, LoanCare conducted their own internal investigation.[7]

6.  It was determined that the breach impacted several FNF services including FNF's title insurance, escrow and other title-related services, mortgage transaction services, and technology to the real estate and mortgage industries.[8] LoanCare's investigation concluded that an unauthorized actor acquired, among other data, LoanCare consumer names, addresses, Social Security Numbers, and

---

[4] *Data Breach Notifications: LoanCare, LLC*, OFFICE OF THE MAINE ATTORNEY GENERAL https://apps.web.maine.gov/online/aeviewer/ME/40/25bd9abc-608b-4a8a-8f35-ba5413b9399f.shtml (last visited January 4, 2024).

[5] *SEC Form 8-K*, U.S. SECURITIES AND EXCHANGE COMMISSION https://www.investor.fnf.com/static-files/c76988f7-929f-4fdb-99dc-2048586391e7 (last visited January 4, 2024).

[6] *Id.*

[7] *Data Breach Notifications: LoanCare, LLC*, OFFICE OF THE MAINE ATTORNEY GENERAL https://apps.web.maine.gov/online/aeviewer/ME/40/25bd9abc-608b-4a8a-8f35-ba5413b9399f.shtml (last visited January 4, 2024).

[8] Fidelity National Financial Data Breach Lawsuit, Stueve Siegel Hanson https://www.stuevesiegel.com/what-investigations-Fidelity-National-Finance-data-breach (last visited January 4, 2024).

loan numbers.[9]

7.    FNF first publicly disclosed the Data Breach in an 8-k filing with the Securities Exchange Commission ("SEC") on November 19, 2023.[10] LoanCare filed their first public disclosure with the Maine Office of the Attorney General on December 20, 2023.[11]

8.    Plaintiffs claims arise from Defendants' failure to safeguard PII provided by and belonging to their customers and failure to provide timely notice of the Data Breach.

9.    Defendants failed to take precautions designed to keep their customers' PII secure.

10.    Defendants owed Plaintiffs and Class Members a duty to take all reasonable and necessary measures to keep the PII they collected safe and secure from unauthorized access.  Defendants solicited, collected, used, and derived a benefit from the PII, yet breached their duty by failing to implement or maintain adequate security practices.

---

[9] *Id*.
[10] *SEC Form 8-K*, U.S. SECURITIES AND EXCHANGE COMMISSION https://www.investor.fnf.com/static-files/c76988f7-929f-4fdb-99dc-2048586391e7 (last visited January 4, 2024).
[11] *Data Breach Notifications: LoanCare, LLC*, OFFICE OF THE MAINE ATTORNEY GENERAL https://apps.web.maine.gov/online/aeviewer/ME/40/25bd9abc-608b-4a8a-8f35-ba5413b9399f.shtml (last visited January 4, 2024).

11.    Defendants admit that information in their system was accessed by unauthorized individuals, though they have provided little information on *how* the data breach occurred.[12]

12.    The sensitive nature of the data exposed through the Data Breach, including Social Security numbers, signifies that Plaintiffs and Class members have suffered irreparable harm.  Plaintiffs and Class members have lost the ability to control their private information and are subject to an increased risk of identity theft.

13.    Defendants also inexcusably delayed disclosing and providing notice of the Data Breach to their customers. Defendants believe that the Data Breach occurred on or around November 19, 2023. Despite FNF's public disclosure on November 19th, 2023, in which FNF states it promptly notified relevant stakeholders of the Data Breach,[13] LoanCare customers were not notified until on around December 22, 2023, and LoanCare's first public disclosure on December 20, 2023 states it only discovered the Data Breach on December 13, 2023.[14]

---

[12] FNF's "shut down" of its systems appears to suggest "that ransomware might have been involved." *Fidelity National Financial Takes Down Systems Following Cyberattack*, SECURITY WEEK https://www.securityweek.com/fidelity-national-financial-takes-down-systems-following-cyberattack/ (last visited January 4, 2023).

[13] *SEC Form 8-K*, U.S. SECURITIES AND EXCHANGE COMMISSION https://www.investor.fnf.com/static-files/c76988f7-929f-4fdb-99dc-2048586391e7 (last visited January 4, 2024).

[14] *Data Breach Notifications: LoanCare, LLC*, OFFICE OF THE MAINE ATTORNEY GENERAL https://apps.web.maine.gov/online/aeviewer/ME/40/25bd9abc-608b-4a8a-8f35-ba5413b9399f.shtml (last visited January 4, 2024).

14.     Defendants, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiffs and members of the Class, causing the exposure of PII for Plaintiffs and members of the Class.

15.     As a result of the Defendants inadequate digital security and notice process, Plaintiffs and Class members' PII was exposed to criminals. Plaintiffs and the Class have suffered and will continue to suffer injuries including: financial losses caused by misuse of PII; the loss or diminished value of their PII as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

16.     Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Defendants' failure to: (i) adequately protect the PII of Plaintiffs and members of the Class; (ii) warn Plaintiffs and members of the Class of Defendants inadequate information security practices; (iii) effectively secure hardware containing protected PII using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiffs and members of the Class of the Data Breach. Defendants conduct amounts at least to negligence and violates federal and state statutes.

17.    Plaintiffs bring this action individually and on behalf of a Nationwide Class and Florida and Delaware Subclasses, of similarly situated individuals against Defendants for: negligence; negligence per se; breach of implied contract; common law invasion of privacy, and breach of implied covenant of good faith and fair dealing. Plaintiffs also bring claims on behalf of a Florida subclass for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*, and on behalf of a Delaware subclass for violation of the Delaware Consumer Fraud Act, 6 Del. Code §§ 2513, et seq, and violation of the Delaware Computer Security Breach Act, 6 Del. C. §§ 12b-102, *et seq*.

18.    Plaintiffs seek to remedy these harms and prevent any future data compromise on behalf of herself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendants inadequate data security practices.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one member of the Class defined below is a citizen of a different state than Defendants, and there are more than 100 putative Class members.

20.    This Court has personal jurisdiction over Defendants because Defendant FNF maintains its principal place of business in this District, and Defendants directed their business at Florida by providing loan and mortgage services in Florida.

21.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

22.    Plaintiff Cody Kettlewood is a citizen of Delaware and resides in Camden Wyoming, Delaware. Plaintiff received a notice of data breach letter – dated December 22, 2023 – from LoanCare informing him that PII was compromised in the Data Breach. As a consequence of the Data Breach, Plaintiff has been forced to and will continue to invest significant time monitoring his accounts to detect and reduce the consequences of likely identity fraud.  As a result of the Data Breach, Plaintiff is now subject to substantial and imminent risk of future harm. Plaintiff Kettlewood obtained his mortgage in Delaware. Defendants acquired Plaintiff Kettlewood's information by purchasing his Delaware mortgage from AnnieMac, and Plaintiff Kettlewood's loan number obtained by hackers identified the mortgage in Delaware.

23.    Plaintiff Richard Freire is a citizen of Florida and resides in Longwood, Florida. Plaintiff Freire received a notice of data breach letter – dated December 22, 2023 – from LoanCare informing him that PII was compromised in the Data Breach. As a consequence of the Data Breach, Plaintiff Freire has been forced to and will continue to invest significant time monitoring his accounts to detect and reduce the consequences of likely identity fraud. Since the Data Breach, Plaintiff Freire has been notified of fraudulent attempts to login to several of his accounts, including Microsoft and Paypal. As a result of the Data Breach, Plaintiff Freire is now subject to substantial and imminent risk of future harm. Plaintiff Freire obtained his mortgage, the loan number for which was compromised in the Breach, in the state of Florida.

24.    Defendant LoanCare is a leading national provider of full-service subservicing and interim subservicing to the mortgage industry and has offered their expertise and best practices in providing servicing solutions for others since 1991. Currently, LoanCare subservices over 1.2 million loans in 50 states, approximating $390 billion in loan balances.[15] Upon information and belief, LoanCare is headquartered at 3673 Sentara Way, Virginia Beach, Virginia 23452.

---

[15] *See LoanCare Information*, ROCKETREACH https://rocketreach.co/loancare-profile_b5e2907ef42e6307#:~:text=At%20the%20present%20time%2C%20LoanCare,mortgage%20and%20financial%20services%20industry (last visited: January 4, 2024).

25.    Defendant FNF is a leading provider of title insurance and transaction services to the real estate and mortgage industries. FNF is the nation's largest title insurance company through their title insurance underwriters - Fidelity National Title, Chicago Title, Commonwealth Land Title, Alamo Title and National Title of New York - that collectively issue more title insurance policies than any other title company in the United States.[16] Upon information and belief, Fidelity National Financial, Inc. is headquartered at 601 Riverside Ave., Building 5, Jacksonville, Florida 32204.

26.    Defendants collected and continues to collect the PII of their customers and clients throughout their usual course of business operations. By obtaining, collecting, using, and deriving benefit from Plaintiffs' and Class's PII, Defendants assumed legal and equitable duties to those persons, and knew or should have known that it was responsible for protecting Plaintiffs' and Class's PII from unauthorized disclosure and/or criminal cyber activity.

---

[16] See *Company Overview*, FIDELITY NATIONAL FINANCIAL https://www.investor.fnf.com/ ( last visited January 4, 2024).

## FACTUAL BACKGROUND

### A.    Background on Defendants

27.    Defendant LoanCare performs or performed loan subservicing functions for Plaintiffs' and Class Members' mortgage loan servicers. Upon information and belief, Defendant FNF is the sole member and operator of Defendant LoanCare.

28.    In the ordinary course of their business practices, Defendants store, maintains, and uses an individuals' PII, which includes Plaintiffs' and Class Members', including but not limited to information such as: full names; Addresses; Social Security numbers; and loan numbers.

29.    Upon information and belief, Defendants made promises and representations to their customers, including Plaintiffs and Class members, that the PII collected from them as a condition of obtaining a loan would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendants would delete any sensitive information after it was no longer required to maintain it.

30.    Plaintiffs and Class members provided their PII to Defendants with the reasonable expectation and on the mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

11

31.    As a result of collecting and storing the PII of Plaintiffs and members of the Class for their own financial benefit,  Defendants had a continuous duty to adopt and employ reasonable measures to protect Plaintiffs' and the Class Member's PII from disclosure to third parties.

### B. The Data Breach

32.    On or around November 19, 2023, FNF had their internal data servers breached by unauthorized third-party hackers, which compromised highly sensitive PII of customers of their subsidiary LoanCare - including, *inter alia*, their names, Social Security Numbers, and loan numbers. As a result of their attack, the hackers acquired PII of over 1.3 million consumers.

33.    On December 20, 2023, LoanCare filed a public notice of Data Breach with the Attorney General of Maine disclosing that an unauthorized party had accessed the computer system of their parent company FNF. The notice reads:

> **What Happened?**
>
> On or about November 19, 2023, LoanCare, LLC ("LoanCare"), which performs or has performed loan subservicing functions for your mortgage loan servicer, became aware of unauthorized access to certain systems within its parent's, Fidelity National Financial, Inc. ("FNF"), information technology network. Upon becoming aware of the incident, FNF commenced an investigation with the assistance of third-party experts, notified certain law enforcement and governmental authorities, and began taking measures to assess and contain the incident. The incident has been contained.

The investigation has determined that an unauthorized third party exfiltrated data from certain FNF systems. As part of the review of the potentially impacted data, LoanCare identified that some of your personal information may have been among that data. It is important to note that we have not identified any fraudulent use of your personal information as a result of this incident  information, or payment card information (PCI) were acquired by the unauthorized actor.

**What Information Was Involved?**

Based on our investigation, we understand that your Name, Address, Social Security Number, and Loan Number may have been obtained by the unauthorized third party.

34.    While Defendants sought to minimize the damage caused by the breach, it cannot and has not denied that there was unauthorized access to the PII of Plaintiffs and Class members.

35.    Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C.    Defendants Failure to Prevent, Identify and Timely Report the Data Breach.**

36.    Defendants admit that unauthorized third persons accessed from their network systems sensitive information about their current and former customers.

37.    Defendants failed to take adequate measures to protect their computer systems against unauthorized access.

38.    Defendants were not only aware of the importance of protecting the PII that it maintains, as alleged, it promoted their capability to do so, as evident from FNF's Privacy Policy.[17] The PII that Defendants allowed to be exposed in the Data Breach is the type of private information that Defendants knew or should have known would be the target of cyberattacks.

39.    Despite their own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[18] Defendants failed to disclose that their systems and security practices were inadequate to reasonably safeguard their customer's sensitive personal information.

40.    The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[19]  Immediate notification of a Data Breach is critical so that those impacted can take measures to protects themselves.

41.    Despite this guidance, Defendants delayed the notification of the Data Breach. Based on LoanCare's disclosure to Maine's Attorney General's Office, the Data Breach is believed to have occurred on or around November 19, 2023, yet Defendants did not inform the public of the Data Breach until December 20, 2023.

---

[17] *See Fidelity National Financial Privacy Notice*, FIDELITY NATIONAL FINANCIAL https://fnf.com/privacy-notice (Last visited January 4, 2024).
[18] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited January 4, 2024).
[19] *Id.*

**D.      The Harm Caused by the Data Breach Now and Going Forward.**

42.      Victims of data breaches are susceptible to becoming victims of identity theft.

43.      The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority," 17 C.F.R. § 248.201(9), and when "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[20]

44.      The type of data that was accessed and compromised here – such as, full name and Social Security number – can be used to perpetrate fraud and identity theft.  Social Security numbers are widely regarded as the most sensitive information hackers can access.  Social Security numbers and dates of birth together constitute high risk data.

45.      Plaintiffs and class members face a substantial risk of identity theft given that their Social Security numbers, addresses, dates of birth, and other important PII were compromised in the Data Breach.  Once a Social Security number is stolen, it can be used to identify victims and target them in fraudulent schemes and identity theft.

---

[20] *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness  (last visited January 4, 2024).

46.     Stolen PII is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

47.     When malicious actors infiltrate companies and copy and exfiltrate the PII that those companies store, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[21]

48.     For example, when the U.S. Department of Justice announced their seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity. Other marketplaces, similar to the now-defunct AlphaBay, "are awash with [PII] belonging to victims from countries all over the world. One of the key challenges of protecting PII online is their pervasiveness. As data breaches in the news continue to reveal, PII about employees, customers and the public are housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[22]

---

[21] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE, Dec. 28, 2020, *available at:* https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited January 4, 2024).

[22] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR, April 3, 2018, *available at:* https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited January 4, 2024).

49.     PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[23] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[24]

50.     A compromised or stolen Social Security number cannot be addressed as simply as a stolen credit card.  An individual cannot obtain a new Social Security number without significant work.   Preventive action to defend against the possibility of misuse of a Social Security number is not permitted; rather, an individual must show evidence of actual, ongoing fraud activity to obtain a new number.  Even then, however, obtaining a new Social Security number may not suffice.  According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[25]

---

[23] *Id.*
[24] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthems-hackers-has-millions-worrying-about-identity-theft  (last visited January 4, 2024).
[25] *Id.*

51.    The PII compromised in the Data Breach demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10 times on the black market."[26]

52.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[27]

53.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[28] Defendant did not rapidly report to Plaintiffs and Class members that their PII had been stolen.

54.    As a result of the Data Breach, the PII of Plaintiffs and Class members have been exposed to criminals for misuse. The injuries suffered by Plaintiffs and Class members, or likely to be suffered thereby as a direct result of Defendants Data

---

[26] *Experts advise compliance not same as security*, RELIAS MEDIA https://www.reliasmedia.com/articles/134827-experts-advise-compliance-not-same-as-security (last visited January 4, 2024).

[27] *2019 Internet Crime Report Released*, FBI, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion. (last visited January 4, 2024).

[28] *Id.*

Breach, include: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendants with the mutual understanding that Defendants would safeguard their PII against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their PII, which remains in the possession of Defendants, and which is subject to further injurious breaches so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiffs and Class Members' PII.

55.    In addition to a remedy for economic harm, Plaintiffs and Class members maintain an interest in ensuring that their PII is secure, remains secure, and is not subject to further misappropriation and theft.

56.    Defendants disregarded the rights of Plaintiffs and Class members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their network servers were protected against

19

unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiffs' and Class members' PII; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiffs and Class members prompt and accurate notice of the Data Breach.

57.    The actual and adverse effects to Plaintiffs and Class members, including the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendants wrongful actions and/or inaction and the resulting Data Breach require Plaintiffs and Class members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiffs and other Class members have suffered, and will continue to suffer, such damages for the foreseeable future.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of

Civil Procedure, individually and on behalf of the following Nationwide Class:

> All persons in the United States whose personal information was compromised in the Data Breach publicly announced by Defendants in December 2023 (the "Class").

59.     Plaintiffs also seek certification of a Delaware Subclass, defined as

follows:

> All Delaware residents whose personal information was compromised in the Data Breach publicly announced by Defendants in December of 2023 (the "Delaware Subclass").

60.     Plaintiffs also seek certification of a Florida Subclass, defined as

follows:

> All Florida residents whose personal information was compromised in the Data Breach publicly announced by Defendants in December of 2023 (the "Florida Subclass").

61.     Specifically excluded from the Class are Defendants, their officers,

directors, agents, trustees, parents, children, corporations, trusts, representatives,

employees, principals, servants, partners, joint venturers, or entities controlled by

Defendants, and their heirs, successors, assigns, or other persons or entities related

to or affiliated with Defendants and/or their officers and/or directors, the judge

assigned to this action, and any member of the judge's immediate family.

62.     Plaintiffs reserve the right to amend the Class definitions above if

further investigation and/or discovery reveals that the Class should be expanded,

narrowed, divided into subclasses, or otherwise modified in any way.

63.     This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

64.     Numerosity (Rule 23(a)(1)): The Class is so numerous that joinder of all Class members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendants, Plaintiffs estimate that the Class is comprised of millions of Class members. The Class is sufficiently numerous to warrant certification.

65.     Typicality of Claims (Rule 23(a)(3)): Plaintiffs' claims are typical of those of other Class Members because they all had their PII compromised as a result of the Data Breach.  Plaintiffs are members of the Class and their claims are typical of the claims of the members of the Class.  The harm suffered by Plaintiffs is similar to that suffered by all other Class members that was caused by the same misconduct by Defendants.

66.     Adequacy of Representation (Rule 23(a)(4)): Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have no interests antagonistic to, nor in conflict with, the Class. Plaintiffs have retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

67.    <u>Superiority (Rule 23(b)(3))</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members is relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendants will likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for their wrongdoing as asserted herein.

68.    <u>Predominant Common Questions (Rule 23(a)(2))</u>: The claims of all Class members present common questions of law or fact, which predominate over any questions affecting only individual Class members, including:

    a.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    b.  Whether Defendants data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    c.  Whether Defendants storage of Class Member's PII was done in a negligent manner;

d.  Whether Defendants had a duty to protect and safeguard Plaintiffs' and Class Members' PII;

e.  Whether Defendants' conduct was negligent;

f.  Whether Defendants' conduct violated Plaintiffs' and Class Members' privacy;

g.  Whether Defendants' conduct violated the statutes as set forth herein;

h.  Whether Defendants took sufficient steps to secure their customers' PII;

i.  Whether Defendants were unjustly enriched;

j.  The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

69.  Information concerning Defendants' policies is available from Defendants' records.

70.  Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude their maintenance as a class action.

71.  The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish

incompatible standards of conduct for Defendants. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

72.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

73.     Given that Defendants have not indicated any changes to their conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiffs and All Class Members)**

74.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above in paragraphs 1 through 18 and paragraphs 22 through 57 as though fully set forth herein.

75.     Plaintiffs bring this claim individually and on behalf of the Class members.

76.     Defendants knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

77.    Defendants had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII.

78.    Defendants had, and continue to have, a duty to timely disclose that Plaintiffs' and Class Members' PII within their possession was compromised and precisely the type(s) of information that were compromised.

79.    Defendants owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected their customers' PII.

80.    Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and their customers.  Defendants were in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

81.    Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants is bound by industry standards to protect confidential PII.

82.     Defendants breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII.

83.     The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

      a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

      b.   Failing to adequately monitor the security of their networks and systems; and

      c.   Failing to periodically ensure that their computer systems and networks had plans in place to maintain reasonable data security safeguards.

84.     Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII within Defendants possession.

85.     Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiffs and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII.

86.    Defendants, through their actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiffs and Class Members that the PII within Defendants possession might have been compromised and precisely the type of information compromised.

87.    Defendants breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiffs' and Class Member's PII. In violation of the FTC guidelines, inter alia, Defendants did not protect the personal customer information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of their networks' vulnerabilities; and failed to implement policies to correct security issues.

88.    Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

89.    It was foreseeable that Defendants failure to use reasonable measures to protect Plaintiffs' and Class Members' PII would result in injury to Plaintiffs and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

90.    It was foreseeable that the failure to adequately safeguard Plaintiffs' and Class Members' PII would result in injuries to Plaintiffs and Class Members.

91.    Defendants breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII to be compromised.

92.    But for Defendants negligent conduct and breach of the above-described duties owed to Plaintiffs and Class members, their PII would not have been compromised.

93.    As a result of Defendants failure to timely notify Plaintiffs and Class Members that their PII had been compromised, Plaintiffs and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

94.    As a result of Defendants negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiffs and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the

personal information compromised as a result of the Data Breach; and overpayment

for the services or products that were received without adequate data security.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiffs and All Class Members)

95.     Plaintiffs incorporate by reference and re-allege each and every

allegation set forth above in paragraphs 1 through 18 and paragraphs 22 through 57

as though fully set forth herein.

96.     Plaintiffs and the Class provided and entrusted their PII to Defendants.

Plaintiffs and the Class provided their PII to Defendants as part of Defendants

regular business practices.

97.     In so doing, Plaintiffs and the Class entered into implied contracts with

Defendant by which Defendants agreed to safeguard and protect such information,

to keep such information secure and confidential, and to timely and accurately

notify Plaintiffs and the Class if their data had been breached and compromised or

stolen, in return for the business services provided by Defendants. Implied in these

exchanges was a promise by Defendants to ensure that the PII of Plaintiffs and Class

members in their possession was secure.

98.     Pursuant to these implied contracts, Plaintiffs and Class members

provided Defendants with their PII in order for Defendants to provide services, for

which Defendants are compensated.  In exchange, Defendants agreed to, among

other things, and Plaintiffs understood that Defendants would: (1) provide services to Plaintiffs and Class members; (2) take reasonable measures to protect the security and confidentiality of Plaintiffs and Class members' PII; and (3) protect Plaintiffs and Class members PII in compliance with federal and state laws and regulations and industry standards.

99.     Implied in these exchanges was a promise by Defendants to ensure the PII of Plaintiffs and Class members in their possession was only used to provide the agreed-upon reasons, and that Defendant would take adequate measures to protect Plaintiffs and Class members' PII.

100.   A material term of this contract is a covenant by Defendants that it would take reasonable efforts to safeguard that information. Defendants breached this covenant by allowing Plaintiffs' and Class members' PII to be accessed in the Data Breach.

101.   Indeed, implicit in the agreement between Defendants and their customers was the obligation that both parties would maintain information confidentially and securely.

102.   These exchanges constituted an agreement and meeting of the minds between the parties: Plaintiffs and Class members would provide their PII in exchange for services by Defendants. These agreements were made by Plaintiffs and Class members as Defendants customers.

103.   When the parties entered into an agreement, mutual assent occurred. Plaintiffs and Class members would not have disclosed their PII to Defendants but for the prospect of utilizing Defendants services. Conversely, Defendants presumably would not have taken Plaintiffs and Class members' PII if it did not intend to provide Plaintiffs and Class members with their services.

104.   Defendants were therefore required to reasonably safeguard and protect the PII of Plaintiffs and Class members from unauthorized disclosure and/or use.

105.   Plaintiffs and Class Members accepted Defendants offer of services and fully performed their obligations under the implied contract with Defendants by providing their PII, directly or indirectly, to Defendants, among other obligations.

106.   Plaintiffs and Class Members would not have entrusted their PII to Defendants in the absence of their implied contracts with Defendants and would have instead retained the opportunity to control their PII.

107.   Defendants breached the implied contracts with Plaintiffs and Class members by failing to reasonably safeguard and protect Plaintiffs' and Class Members' PII.

108.   Defendants failure to implement adequate measures to protect the PII of Plaintiffs and Class Members violated the purpose of the agreement between the parties.

109.   Instead of spending adequate financial resources to safeguard Plaintiffs and Class Members' PII, which Plaintiffs and Class Members were required to provide to Defendants, Defendants instead used that money for other purposes, thereby breaching their implied contracts it had with Plaintiffs and Class members.

110.   As a proximate and direct result of Defendants breaches of their implied contracts with Plaintiffs and Class Members, Plaintiffs and the Class Members suffered damages as described in detail above.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and All Class Members)**

111.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth above in paragraphs 1 through 18 and paragraphs 22 through 57 as though fully set forth herein.

112.   Plaintiffs and Class Members conferred a benefit upon Defendants by using Defendants services.

113.   Defendants appreciated or had knowledge of the benefits conferred upon itself by Plaintiffs. Defendants also benefited from the receipt of Plaintiffs'

PII, as this was used for Defendants administer their services to Plaintiffs and the Class.

114.    Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiffs' services and their PII because Defendants failed to adequately protect their PII. Plaintiffs' and the proposed Class would not have provided their PII to Defendants or utilized their services had they known Defendants would not adequately protect their PII.

115.    Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiffs all unlawful or inequitable proceeds received by it because of their misconduct and Data Breach.

**COUNT IV**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On behalf of Plaintiffs and All Class Members)**

116.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above in paragraphs 1 through 18 and paragraphs 22 through 57 as though fully set forth herein.

117.    Defendants have violated the covenant of good faith and fair dealing by their conduct alleged herein.

118.    Every contract in this state has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

119.    Plaintiffs and Class Members have complied with and performed all, or substantially all, of the obligations imposed on their conditions of their loans with Defendants.

120.    Defendants breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard their customers PII, failing to timely and accurately disclose the Data Breach to Plaintiffs and Class Members and continued acceptance of PII and storage of other personal information after Defendants knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

121.    Defendants acted in bad faith and/or with malicious motive in denying Plaintiffs and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them substantial injury in an amount to be determined at trial.

**COUNT V**
**VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT ("CFA")**
**6 Del. Code § § 2513, *et seq.***
**(On Behalf of Plaintiff Kettlewood and Delaware Subclass Members)**

122.    Plaintiff Kettlewood, on behalf of the Delaware Subclass, incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 18 and paragraphs 22 through 57 as though fully set forth herein.

123.    Defendants are a "person" that is involved in the "sale" of "merchandise," as defined by 6 Del. Code § 2511(7), (8), and (6).

124.    Defendants advertised, offered, or sold goods or services in Delaware and engaged in trade or commerce directly or indirectly affecting the people of Delaware.

125.    Defendants used and employed deception, fraud, false pretense, false promise, misrepresentation, and the concealment, suppression, and omission of material facts with intent that others rely upon such concealment, suppression and omission, in connection with the sale and advertisement of merchandise, in violation of 6 Del. Code § 2513(a), including:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Subclass Members' PII, which was a direct and proximate cause of the Data Breach;

    b.  Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c.  Failing to comply with common law and statutory duties pertaining to the 162 security and privacy of Subclass Members' PII,

including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Subclass Members' PII, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.  Omitting, suppressing, and concealing the material fact that it did not properly secure Subclass Members' PII; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

126.  Defendants representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of [DEFENDANT]'s data security and ability to protect the confidentiality of consumers' PII.

127.  Defendants acted intentionally, knowingly, and maliciously to violate Delaware's Consumer Fraud Act, and recklessly disregarded the Delaware Subclass Members' rights. [DEFENDANT]'s numerous past data breaches put it on notice that their security and privacy protections were inadequate.

128.  Had Defendants disclosed to Subclass Members that their data systems were not secure and, thus, were vulnerable to attack, Defendants would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendants was trusted with sensitive and valuable PII regarding millions of consumers, including Subclass Members. Defendants accepted the responsibility of protecting the data while keeping the inadequate state of their security controls secret from the public. Accordingly, the Delaware Subclass Members acted reasonably in relying on Defendants misrepresentations and omissions, the truth of which they could not have discovered.

129.  Defendants unlawful trade practices were gross, oppressive, and aggravated, and Defendants breached the trust of Delaware Subclass Members.

130.  As a direct and proximate result of Defendants unlawful acts and practices, Delaware Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft;

38

time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for Defendants services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Data Breach. Plaintiffs, on behalf of Delaware Subclass Members, seek all monetary and non-monetary relief allowed by law, including damages under 6 Del. Code § 2525 for injury resulting from the direct and natural consequences of Defendants unlawful conduct; injunctive relief; and reasonable attorneys' fees and costs.

**COUNT VI**
**VIOLATION OF THE DELAWARE COMPUTER SECURITY ACT**
**6 Del. C. §§ 12b-102, *et seq.***
**(On Behalf of Plaintiff Kettlewood and Delaware Subclass Members)**

131.    Plaintiff Kettlewood and the Delaware Subclass incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 18 and paragraphs 22 through 57 as though fully set forth herein.

132.    Plaintiff brings this claim individually and on behalf of the members of the Delaware Subclass, pursuant to 6 Del. C. §§12B-102(a).

133.    Defendants are required to accurately notify consumers (including Plaintiff and Class Members) if they become aware of a data breach that is reasonably likely to result in the misuse of a Delaware resident's "personal information" in the most expedient time possible and without unreasonable delay under 6 Del. C. § 12B-102(a).

134.    In the present matter, Defendants inexcusably delayed disclosing and providing notice of the Data Breach to their customers. Defendants believe that the Data Breach occurred on or around November 19, 2023. Despite FNF's public disclosure on November 19, 2023, in which FNF states it promptly notified relevant stakeholders of the Data Breach,[29] LoanCare customers were not notified until on around December 22, 2023, and LoanCare's first public disclosure on December 20, 2023 states it only discovered the Data Breach on December 13, 2023.[30] This runs contrary to FNF's statement regarding their notification of all relevant stakeholders.

135.    Since Defendants were aware of a breach of their IT system involving Delaware Plaintiff's and Class Members' loan information that is reasonably likely to result in their misuse, Defendants had an obligation to disclose the Data Breach in a timely and accurate fashion per 6 Del. C. § 12B-102(a).

136.    By failing to disclose the Data Breach in a timely and accurate manner, Defendants violated 6 Del. C. § 12B-102(a).

137.    Defendants    wrongful    actions,    inaction,    and    omissions, unconscionable, unfair, and deceptive acts or practices, failure to timely and

---

[29] *SEC Form 8-K*, U.S. SECURITIES AND EXCHANGE COMMISSION https://www.investor.fnf.com/static-files/c76988f7-929f-4fdb-99dc-2048586391e7 (last visited January 4, 2024).
[30] *Data Breach Notifications: LoanCare, LLC*, OFFICE OF THE MAINE ATTORNEY GENERAL https://apps.web.maine.gov/online/aeviewer/ME/40/25bd9abc-608b-4a8a-8f35-ba5413b9399f.shtml (last visited January 4, 2024).

accurately report the Data Breach, and failure to use reasonable measures to safeguard, protect, and monitor the security of Plaintiff's and Class Members' loan information, directly and/or proximately resulted in injury, harm, and damages to Plaintiff and Class Members in the form of, inter alia, the ongoing, imminent, and impending threat of identity theft and identity fraud; actual identity theft and identity fraud; loss of the confidentiality of the wrongfully disclosed and compromised loan information; the illegal sale of the compromised PII on the deep web black market; lost value of the compromised PII; cost of monitoring, credit freezes, and/or identity theft insurance; time spent scrutinizing bank statements, credit card statements, credit reports, and repairing damaged credit; expenses and/or time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; and/or other economic and non-economic injury, harm, and damages.

138.    Defendants above-described wrongful actions, inaction, and omissions constitute breaches of the Delaware Computer Security Breach Act.

### COUNT VII
### VIOLATION OF THE FLORIDA DECEPTIVE AND
### UNFAIR TRADE PRACTICES ACT ("UTPA")
### Fla. Stat. §§ 501.201, *et seq.*
### (On Behalf of Plaintiff Freire and Florida Subclass Members)

139.    Plaintiff Freire and the Florida Subclass incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 18 and paragraphs 22 through 57 as though fully set forth herein.

140.   Plaintiff brings this claim individually and on behalf of the members of the Florida Subclass.

141.   Pursuant to Fla. Stat. §501.203, Plaintiff and Florida Subclass Members are "consumers."

142.   Defendants advertised, offered, or sold services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

143.   Defendants engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1).

144.   Defendants (a) Failed to implement and maintain reasonable security and privacy measures to protect Plaintiff and Subclass Members' PII, which was a direct and proximate cause of the Data Breach; (b) Failed to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach; (c) Failed to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2), which was a direct and proximate cause of the Data Breach; (d) Misrepresented that it would protect the privacy and confidentiality of Plaintiff's and Subclass Members' PII, including by

implementing and maintaining reasonable security measures; (e) Misrepresented that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2); (f) Omitted, suppressed, and concealed the material fact that it did not properly secure Plaintiff's and Subclass Members' PII; and (g) omitted, suppressed, and concealed the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2).

145.   Defendants representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' PII.

146.   Had Defendants disclosed to Plaintiff and Subclass Members that their data systems were not secure and, thus, were vulnerable to attack, Defendants would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendants were entrusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff and Subclass Members. Defendants accepted the responsibility

of protecting the data but kept the inadequate state of their security controls secret from the public

147.   Accordingly, Plaintiff and Subclass Members acted reasonably in relying on Defendants misrepresentations and omissions, the truth of which they could not have discovered.

148.   As a direct and proximate result of Defendants' unconscionable, unfair, and deceptive acts and practices, Plaintiff and Florida Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for Defendants services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Data Breach.

149.   Plaintiff and Florida Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages under Fla. Stat. § 501.211; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a)    For an order determining that this action is properly brought as a class action and certifying Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

(b)    For an order declaring the Defendants conduct violates the laws referenced herein;

(c)    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d)    For damages in amounts to be determined by the Court and/or jury;

(e)    An award of statutory damages or penalties to the extent available;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an order of restitution and all other forms of monetary relief; and

(h)    Such other and further relief as the Court deems necessary and appropriate.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand a trial by jury of all issues so triable.

Dated: January 4, 2024                         Respectfully submitted,

                                               **STEINLAW FLORIDA, PLLC**

                                               By: *<u>/s/ Jonathan M. Stein</u>*
                                               Jonathan M. Stein (Fla. Bar No. 9784)
                                               1825 NW Corporate Blvd., Suite 110
                                               Boca Raton, FL 33431
                                               Telephone: (561) 834-2699
                                               Email: jon@SteinLawFlorida.com

                                               Mark S. Reich (*pro hac vice*)
                                               Courtney Maccarone (*pro hac vice*)
                                               Gary I. Ishimoto (*pro hac vice*)
                                               **LEVI & KORSINSKY, LLP**
                                               33 Whitehall Street, 17th Floor
                                               New York, NY 10004
                                               Telephone: (212) 363-7500
                                               Facsimile: (212) 363-7171
                                               Email: mreich@zlk.com
                                               Email: cmaccarone@zlk.com
                                               Email: gishimoto@zlk.com

                                               *Counsel for Plaintiffs*